IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CAROL VAN VALKENBURGH,

       Plaintiff,

    v.                                       CIV-09-1151-GBW-DJS

TRACKS TO MEXICO, INC.,

       Defendant.

**ORDER DENYING SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on Defendant's "Motion and Memorandum in Support of Defendant's Motion for Summary Judgment." *Doc. 54*. Having reviewed the pleadings, evidence, and relevant case law, the Court hereby denies Defendant's Motion.

## I.    BACKGROUND

The following derives from Tracks to Mexico, Inc.'s "Statement of Undisputed Material Facts," Plaintiff Carol Van Valkenburgh's "Memorandum Brief in Opposition to Motion for Summary Judgment" ("Response"), and the various exhibits attached to the summary judgment pleadings. *See* Def.'s Mot. 1-5; Pl.'s Resp. 1-8.

Defendant Tracks to Mexico, Inc. ("Defendant") organizes and conducts specialized railroad excursions. Def.'s Statement of Undisputed Material Facts ("Def.'s Facts") ¶ 3. During these expeditions, Defendant transports customers, in their recreational vehicles

("RVs"), atop railroad flat cars from a railroad station in Chihuahua, Mexico, to places of interest throughout Mexico. *Id.* ¶¶ 3-4. While touring Mexico, customers routinely exit their RVs and descend from the flat cars. *Id.* ¶ 5. Therefore, Defendant provided its customers with ladders so that customers could ascend and descend from the railroad flat cars. *Id.*

On March 2, 2007, Plaintiff Carol Van Valkenburgh ("Plaintiff") and her husband, Thomas Van Valkenburgh (collectively, "the Van Valkenburghs"), arrived in El Paso, Texas, in their RV, to begin an excursion with Defendant. *Id.* ¶ 6. Before leaving El Paso, the Van Valkenburghs assembled with the other RV operators who were taking the trip so that Defendant could brief them all on the general procedures that would apply to their travels. *Id.* ¶ 6; Pl. Dep. 46:9-16, May 11, 2010. In addition to procedural matters, Defendant also distributed general releases to most or all of the tour participants. Def.'s Facts ¶ 7. Although Defendant obtained a signed copy of Thomas Van Valkenburgh's ("Mr. Van Valkenburgh's") release, no release from Plaintiff has ever been produced. *Id.* Despite statements from Defendant's president that all tour participants must sign this release before undertaking the excursion, Plaintiff does not recollect signing the release. *Id.*; Olsen Aff. 2; Pl. Dep. 36-37.

On March 3, 2007, Defendant and its agents loaded the tour participants' RVs onto railroad flat cars at the railway station in Ciudad Chihuahua, Mexico, and the group began their tour. Def.'s Facts ¶ 8. Four days later, on March 7, 2007, the train pulled into station

at Divisadero, Mexico. *Id.* ¶ 9. Shortly thereafter, Mr. Van Valkenburgh lowered the ladder from the Van Valkenburgh's flat car and placed it on the train station platform so that he and Plaintiff could disembark. *Id.*; Mr. Van Valkenburgh Dep. 23:2, May 11, 2010. To ensure their safety, Mr. Van Valkenburgh recalls that "he pushed on [the ladder] and it was sturdy." Mr. Van Valkenburgh Dep. 23:2-3. As Plaintiff then descended the ladder, she fell and struck her head on the cement platform. Def.'s Facts ¶ 9.

Mr. Van Valkenburgh witnessed his wife's sudden fall from the ladder. Mr. Van Valkenburgh Dep. 23:12-14. By his account, "she went and she turned, and she stepped on the ladder." *Id.* at 23:12-13. In his words, "[t]he next thing, she fell." *Id.* at 23:13.

After seeing his wife fall, Mr. Van Valkenburgh "quickly moved" to observe her condition, looked down, and "thought she was dead." *Id.* at 23:14-15. He then descended from an alternate step in the front of the flat car and began to deliver aid to his wife. *Id.* at 23:18-22. By his estimation, Plaintiff remained unconscious for anywhere between forty-five (45) seconds and two minutes. *Id.* at 23:22-24.

Following the incident, a doctor was summoned from a nearby town and Plaintiff was prescribed medication. *Id.* at 24:16-25:4; Pl. Dep. 68:24-69:2. When Plaintiff returned to her flat car and RV, she ascended the flat car using the same ladder that was involved in her fall. Pl. Dep. 68:8-15. In fact, the Van Valkenburghs continued to use this same ladder for the remainder of the trip. Pl. Dep. 101:6-8; Mr. Van Valkenburgh Dep. 64:2-4. In sum, the trip lasted seventeen days. Pl. Dep. 78:23-79:12.

Soon after the excursion concluded, Plaintiff reported a near absolute loss of her senses of smell and taste.  *Id.* at 85:3-7.  According to her recollection, when the couple returned from Mexico and arrived in an Arizona RV park, she "could not smell anything and [] could not taste anything."  *Id.* at 85:13-14.  Her sensory deprivation was only tempered by her ability to "detect if something is sweet or salty."  *Id.* at 85:14-15.

Once the Van Valkenburghs returned to their home in Santa Fe, New Mexico, Plaintiff scheduled an appointment with her ear, nose, and throat physician, Dr. Thomas Thomason ("Dr. Thomason").  Dr. Thomason Dep. 3:9-10, 26:9, Aug. 30, 2010.  In that appointment of March 23, 2007, Plaintiff complained that although "she never had a good sense of smell," since the date of her fall, she felt like her sense of smell was "completely gone." *Id.* at 27:6-8. Dr. Thomason proceeded to perform a rhinoscopy, by which he "really look[ed] around carefully inside [Plaintiff's] nose with a special magnifying scope, especially to evaluate her superior septum and her cribriform plate area."  *Id.* at 50:12-17.  Because these areas "looked entirely normal," Dr. Thomason concluded that Plaintiff had incurred a contrecoup injury. *Id.* at 50:17, 51:2-3. Specifically, Dr. Thomason reasoned that Plaintiff, "fell, hit [the back of] her head, and tore loose her first cranial nerve." *Id.* at 52:10-12.  From that injury and his reading of her medical history, Dr. Thomason diagnosed Plaintiff with the inability to perceive odors, which is known as anosmia.  *Id.* at 54:12-20.  Dr. Thomason was not, however, able to objectively confirm Plaintiff's anosmia.  *Id.* at 47:22-48:1.

-4-

Dr. Thomason then referred Plaintiff to Dr. Roland Gerencer ("Dr. Gerencer").  In Dr. Gerencer's opinion, he received Plaintiff's referral because he is "the only fellowship trained sinus surgeon in the State of New Mexico," and as a result, he deals more closely with "chemosensory disorders."  Dr. Gerencer Dep. 9:13-15, Oct. 27, 2010.  Dr. Gerencer's notes reflect that Plaintiff reported "that she sustained some sort of injury to her head and then she experienced an inability to perceive odors soon afterwards." *Id.* at 10:7-9.  These notes also reveal that Dr. Gerencer performed a "complete ear, nose, and throat evaluation," which included a line of questioning and conducting "rhinoscopic and fiberoptic" examinations of her nasal passages. *Id.* at 10:21-11:1.  Drawing on this examination of Plaintiff and her history as she related it to him, Dr. Gerencer stated "[t]here was no reason for me not to think that she could not smell anything." *Id.* at 11:15-17.  Just as with Dr. Thomason, however, Dr. Gerencer recalled that he "had to basically assume and take at face value that [Plaintiff] could not smell anything," because he "did not have the means at that time in [his] practice to perform objective olfactory testing." *Id.* at 11:5-6, 14-15.  Consequently, he too was unable to objectively confirm Plaintiff's anosmia. *Id.* at 11:18-24.

## II.    PROCEDURAL HISTORY

Defendant removed this case to federal court on December 7, 2009. *Doc. 1.*  In the suit giving rise to the removal, Plaintiff asserts claims against Defendant for both (1) breach of contract, and (2) negligence.  Pl.'s Compl. ¶¶ 1-17.

The first claim originates from what Plaintiff refers to as the "New Mexico contract" entered into between the Van Valkenburghs and Defendant for the RV excursion into Mexico. *Id.* ¶¶ 6-7. As detailed in her Complaint, she alleges that Defendant breached the parties' contract, in essence, by negligently failing to provide Plaintiff with a dependable and safe means of mounting and dismounting the railroad flat car. *Id.* ¶ 11. Unsurprisingly, Plaintiff's second claim, which sounds in negligence, relates to this same allegation of breach. *Id.* ¶¶ 16-17. To tailor the negligence claim, Plaintiff simply avers that "[t]he acts and omissions of Defendant . . . also constitute actionable negligence on the part of Defendant . . . ." *Id.* ¶ 17. She explains that "[Defendant] owed Plaintiff the duty of reasonable care, breached that duty[,] and proximately caused Plaintiff's injuries as a result." *Id.* As to both claims, Plaintiff "prays for judgment against [Defendant] for compensatory damages in an amount to be determined by the jury,[1] for her costs[,] and whatever further relief the Court deems fit and proper." *Id.* at 5.

On February 7, 2011, Defendant filed its "Motion and Memorandum in Support of Defendant's Motion for Summary Judgment" ("Motion"). *Doc. 54.* Therein, Defendant seeks summary dismissal of Plaintiff's claims on three grounds: (1) that Plaintiff has failed to produce evidence of negligence; (2) for Plaintiff's failure to proffer evidence that she has sustained injury; and (3) because Plaintiff's claims are barred by a general release of

---

[1]      Plaintiff timely filed a Jury Demand on the same date she filed her Complaint. *Doc. 2*, Ex. C.

liability.  Def.'s Mot. 6-12.  In support of these arguments, Defendant appends numerous exhibits, including affidavits, transcripts of deposition testimony, and other evidentiary materials.

Plaintiff responded on February 21, 2011.  *Doc. 56*.  In her Response, Plaintiff disputes each of Defendant's grounds for summary judgment.  Pl.'s Resp. 8-18. Furthermore, Plaintiff communicates her summary of the claim in the following terms: "Defendant provided [Plaintiff] with a ladder for her use; the ladder had a defective foot; it collapsed while [Plaintiff] was using it in a proper manner, causing her to strike her head, and unfortunately, to permanently lose two of the most elemental senses human beings have." *Id.* at 19.  Based on the Response and its numerous attachments, Plaintiff prays this Court deny Defendant's Motion.

Summary judgment pleadings closed on March 7, 2011, with the filing of Defendant's "Reply to Plaintiff's Memorandum Brief in Opposition to Motion for Summary Judgment" ("Reply").  *Doc. 59*.  Fundamentally, Defendant's Reply revisits the arguments made in Defendant's Motion while also explaining that "Plaintiff has failed in her burden under Rule 56 requiring that she go beyond the pleadings, and show, through affidavits, depositions, answers to interrogatories and admissions that there is a genuine issue for trial."  Def.'s Reply 5.

## III.    STANDARD AND APPLICABLE LAW

### A.    Summary Judgment

Federal Rule of Civil Procedure 56(a) states that federal courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011).  Under this standard, the movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact .") (internal quotation marks omitted).

Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  More particularly, the non-movant must "set forth specific facts showing that there is a genuine issue for trial as to those *dispositive matters* for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (emphasis added).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." *Liberty Lobby*, 477 U.S. at 256. *See Abercrombie v. City of Catoosa*,

896 F.2d 1228, 1231 (10th Cir. 1990); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("'[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'") (citation omitted).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus*, 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 251 (quoting *Schuylkill & Dauphin Improv. Co. v. Munson*, 81 U.S. 442, 448 (1871)); *Vitkus*, 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (internal citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See*

*Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.

### B.    Applicable Law

In a filing subsequent to its Motion for Summary Judgment, Defendant asked this Court to strictly apply the doctrine of *lex loci delicti commissi* and adjudicate this suit primarily as a tort action under Mexican law.  *Doc. 63*.  Recognizing the need to consistently apply the appropriate choice of law throughout the litigation, the Court scheduled the parties for a series of status conferences regarding the request.  *See docs. 69-71*.  Following these status conferences, Defendant withdrew its request and stipulated that New Mexican law was applicable and should be used throughout the determination of this suit.  *See doc. 71*.  Plaintiff agrees that New Mexico law is applicable.  The Court agrees and will interpret all claims in this suit pursuant to New Mexico substantive law.

## IV.    ANALYSIS

As mentioned above, Defendant advances three individuated grounds for granting summary judgment in its favor.  These contentions will be discussed *seriatim*.

### A.    There Is Sufficient Evidence of Duty, Breach, and Causation to Submit the Negligence Claim to a Jury

#### 1.    Defendant's position

Defendant's first argument for granting summary judgment alleges that "Plaintiff has failed to prove all elements of negligence in the instant case, and therefore her claims against Defendant should be dismissed." Def.'s Mot. 8. Specifically, Defendant focuses on four alleged flaws in Plaintiff's claim: (1) the nature of Plaintiff's claim regarding the defective ladder and the evidence proffered in support; (2) Plaintiff's continued use of the ladder despite the alleged defect; (3) Plaintiff's inability to provide affidavits or expert testimony concerning the reasonableness of Defendant's actions at the time of the alleged negligence; and (4) Plaintiff's failure to produce substantial evidence of causation. *Id*. at 8-9; Def.'s Reply 6-11.

Defendant characterizes the instant suit as "an accident in which Plaintiff fell from a ladder while disembarking from a flatbed railroad car." Def.'s Mot. 8; Def.'s Facts ¶ 9. Defendant avers that Plaintiff "has fail[ed] to produce any evidence that the ladder in question was in fact defective." Def.'s Mot. 8; Def.'s Facts ¶ 14. Indeed, Defendant charges that "the only witnesses Plaintiff has produced who can testify to the condition of the ladder are [Plaintiff] and her husband." Def.'s Mot. 8-9. Defendant notes, for example, the lack of any photographs showing the ladder's alleged defect. *Id*. at 9; Def.'s Facts ¶ 14. Thus, in Defendant's judgment, "Plaintiff has not produced any . . . objective evidence" about the "leg of the ladder" required to maintain a suit in negligence. Def.'s Mot. 9. Further, Defendant discounts the very basis for Plaintiff's suit, characterizing the negligence claim as "essentially a claim of defective product which was never alleged in

Plaintiff's original complaint, . . . [and] [t]herefore, it is not an argument that should be entertained by the court."  Def.'s Reply 6.

Next, Defendant questions the Van Valkenburgh's continued use of the ladder despite its allegedly defective foot.  Def.'s Mot. 9.  Defendant contends that "despite this alleged defect, the Van Valkenburghs used this ladder several times before the incident," and more importantly, they "continued to use the ladder up to two days after the incident." *Id.*; Def.'s Facts ¶ 12.  Likewise, Defendant details Plaintiff's statement "that she trusted the ladder," and Mr. Van Valkenburgh's deposition testimony "that the ladder seemed sturdy."  Def.'s Mot. 9; Def.'s Facts ¶¶ 9, 10.  Throughout the entire excursion, Defendant opines that "Plaintiff never brought any concerns [about the ladder] to the attention of [Defendant] or [its] employees."  Def.'s Mot. 9.

Third, Defendant argues that "Plaintiff has not provided affidavits or expert testimony concerning the reasonableness of [Defendant's] actions at the time of the alleged negligence."  *Id.*  According to Defendant, "Plaintiff's husband was the only one who ever placed the ladder prior to boarding or departing the train."  *Id.*; Def.'s Facts ¶ 13.  Despite Plaintiff's "insinuat[ion] . . . that [Defendant] may have been negligent in instructing guests to place their ladder to the left side of the car on the cement platform," Defendant counters that "Plaintiff has not produced any evidence concerning the reasonableness of this instruction."  Def.'s Mot. 9.  Thus, Defendant concludes that "Plaintiff has failed to provide deposition testimony or objective evidence that would establish that [Defendant] did not

exercise reasonable care in [its] actions."  *Id.*

Lastly, Defendant contends that Plaintiff has failed to prove causation.  Def.'s Reply 9.  Although Defendant's Motion makes only passing reference to this issue by citing to the *Hull* case,[2] Defendant's Reply develops the argument.  Therein, Defendant challenges Plaintiff's assertion that the ladder "collapsed" beneath her, and directs the Court to the deposition testimony of both Plaintiff and Mr. Van Valkenburgh, wherein they both refer to Plaintiff falling from the ladder.  *Id.*  In addition, Defendant attacks Plaintiff's various conclusory allegations, including, "[w]e know that the ladder was damaged and the damage was to a key part," "[w]e know the ladder collapsed when placed on a hard surface and did not collapse on other occasions when it was used," and "[w]e know that undamaged ladders do not collapse when used in a non-negligent manner."  Def.'s Reply 9-10 (citing Pl.'s Resp. 12-13).  Finally, Defendant avers that "Plaintiff has produced no evidence of where [Defendant] instructed [the Van Valkenburghs] to place the ladder when accessing the flatcar."  *Id.* at 10.  For these reasons, Defendant maintains that "Plaintiff has failed to produce any substantial evidence of causation in this lawsuit."  *Id.* at 9.

### 2. Plaintiff's position

In her Response, Plaintiff outlines her position by explaining, "[i]n order to participate in [the] excursion, a patron of [Defendant] needed some means of ingress and

---

[2]        *See Hull v. Feinstein*, 133 N.M. 531 (Ct. App. 2002).

egress, i.e., a means of getting on and off his or her flatcar . . . which was five to six feet above the ground."  Pl.'s Resp. 8.  Therefore, Plaintiff explains that "[Defendant] opted to provide especially durable stepladders to its clients . . . constructed of a heavy metal . . . [and Defendant] instructed the Van Valkenburghs, and all the other clientele, not to use any other means of getting on or off their railroad car."  *Id.*  Consequently, Plaintiff contends that since "[Defendant] was in charge of the train (insofar as its clients were concerned), it owed them the duty to use ordinary care to have the train and relevant equipment in reasonably safe condition."  *Id.* at 10.

As to the evidence substantiating the ladder's condition, Plaintiff remarks that "two witnesses have testified as to the defective state of the ladder."  *Id.* at 11.  Beyond this, she also claims that Defendant "was on constructive notice of the condition of its own ladder."  *Id.* at 9 (citing *First Nat'l Bank in Albuquerque v. Nor-Am Agric. Prods. Inc.*, 88 N.M. 74 (Ct. App. 1975)).  Plaintiff also notes that "no one has produced contradictory evidence" as to the defective state of the ladder.  *Id.* at 11.

Plaintiff also counters Defendant's contention that she used the ladder both before and after the incident despite its alleged defect.  According to Plaintiff, Defendant "gave the Van Valkenburghs one means of getting on and off their assigned platform car - a ladder with a twisted pedestal."  *Id.*  By her estimation, "she had no choice but to use [Defendant's] ladder . . . and there is no evidence of negligence on the part of the Van Valkenburghs."  *Id.* at 10-11.

-14-

Additionally, Plaintiff responds to Defendant's contention that she has failed to produce expert testimony or affidavits concerning Defendant's negligence. In her defense, Plaintiff insists "that by failing to preserve the ladder, [Defendant] made it impossible for an expert to have any relevant function in this lawsuit." *Id.* at 11. Further, she maintains that "[w]hen a defendant in possession of the instrumentality in question does not preserve it, it is estopped to contend that the plaintiff should have subjected it to expert examination." *Id.* Indeed, Plaintiff asserts that "[f]ailure to preserve the ladder creates a rebuttable inference that the ladder was defective." *Id.* (citing *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006); *Restaurant Mgmt. Co. v. Ridde-Fenwall*, 127 N.M. 708, 713 (Ct. App. 1999)).

Finally, Plaintiff opposes Defendant's characterization of this suit as "one where [Plaintiff] 'fell' from a ladder." Pl.'s Resp. 12. Rather than merely falling from the ladder, Plaintiff interprets the testimony she and Mr. Van Valkenburgh produced as evidencing "that the ladder collapsed beneath her." *Id.* Collectively, Plaintiff summarizes the Van Valkenburghs' testimony in the following terms:

> We know that the ladder was damaged and that the damage was to a key part, one of its pedestals. There is no evidence to the contrary. We know that [Defendant] provided the damaged ladder to the Van Valkenburghs and instructed them to use it. We know that [Plaintiff] was not negligent in the manner in which she climbed down the ladder and that [Mr.] Van Valkenburgh was not negligent in his placement of the ladder, which, again, was in obedience to the instructions he had received. There is no evidence to the contrary on these points. We know the ladder collapsed when placed on a hard

-15-

> surface and did not collapse on the other occasions when it was used, also on [Plaintiff's] instruction, on a more forgiving surface (the earth between the adjoining flatcars). We know that undamaged ladders do not collapse when used in a non-negligent manner.

*Id.* at 12-13.  Apart from these statements, Plaintiff argues that causation can be inferred under the facts of this case.  *Id.* at 13.

### 3.    New Mexico standard for negligence

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  *See Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48 (2003).  Generally, negligence is a question of fact for the jury.  *See Schear v. Bd. of County Comm'rs*, 101 N.M. 671, 672 (1984); *Betsuie v. United States*, 65 F. Supp. 2d 1218, 1222 (D.N.M. 1999) (noting that breach of the duty of care is a question for the trier of fact) (citation omitted).  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  *Id.* at 672.  "Whether a duty exists is a question of law for the courts to decide."  *Id.* at 672 (citation omitted).

New Mexico courts have stated that, generally, if "it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant."  *See Herrera*, 134 N.M. at 48.  However, "[f]oreseeability of a plaintiff alone does 'not end the inquiry for the imposition of a duty.'"  *Id.*  Instead, "[p]olicy determines duty."  *Id.*  The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the

obligation of the defendant [is] one to which the law will give recognition and effect ." *Id.* at 49 (internal quotation marks and citation omitted).  To determine whether the obligation of the defendant is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  *Id.* at 48.

### 4.    Discussion

Concerning the elements of duty, breach, and causation, Defendant has failed to satisfy its burden of production pursuant to Federal Rule of Civil Procedure 56.  FED. R. CIV. P. 56 (a) & (c).  Under Tenth Circuit precedent, "[b]efore the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law."  *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (quotation omitted).  "In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citations omitted).  To achieve this, "the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of New Mexico v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007).  From the instant pleadings and proffers, the Court finds that Defendant has failed to demonstrate the required absence of evidence related to duty, breach, or causation.

### a.    Duty

Having examined the pleadings, the Court remains unable to discern any instance where Defendant clearly denies owing Plaintiff a duty of reasonable care.  In fact, beyond the recitation of court holdings addressing duty, Defendant's only mention of duty occurs in its statement that "Plaintiff has the burden of proving the elements of duty have been met and has failed to meet this burden."  Def.'s Reply 6.  This allegation, standing alone, does not satisfy Defendant's prima facie summary judgment burden.  *See Thom*, 353 F.3d at 851.

Notwithstanding Defendant's bald assertion, the facts of the case substantiate the existence of a duty owed by Defendant to Plaintiff.  In Plaintiff's Response, she characterizes the parties' relationship and Defendant's resulting duty thus:

> In the case at bar, [Defendant] invited the Van Valkenburghs, in return for the payment of money to ride its train.  The Van Valkenburghs accepted and paid the money. [Defendant] gave the Van Valkenburghs one means of getting on an off their assigned platform car . . . [Defendant] owed its clients the duty of safeguarding them against injuries it reasonably might foresee . . . [t]his includes the duty to provide each business invitee, such as [Plaintiff], with a reasonably safe means of ingress and egress.

Pl.'s Resp. 9-10 (internal citations omitted).  Nothing in Defendant's pleadings contravenes these facts.  Def.'s Facts ¶¶ 3, 5; Def.'s Mot. 6-7.

Additionally, the weight of case law establishes the existence of a duty from Defendant to Plaintiff.  The New Mexico Supreme Court has held as much, finding that a business owes its clients the duty of safeguarding them against reasonably foreseeable

injury.  *See Klopp v. Wackenhut Corp.*, 113 N.M. 153, 157-58 (1992).  Similarly, the New Mexico

Court of Appeals held that businesses bear "the duty to exercise ordinary care to keep

[their] premises in a safe condition" for business invitees.  *Holguin v. Smith's Food King*

*Properties, Inc.*, 105 N.M. 737, 739 (Ct. App. 1987).  Where a dangerous condition exists on

a  company's premises, caused by the business or its employees, or if the business had

actual knowledge of such a condition, then it has a "duty to exercise ordinary care to correct

it, or to warn [the invitee] of the presence of the condition."  *Id.*

　　　In a situation like the instant one, where Defendant's premises consisted of railroad

flat cars, Defendant was also obligated "to provide an invitee with [a] reasonably safe means

of ingress and egress, both within the confines of the premises owned or controlled by the

inviter, and, within limitations dictated by the facts of the case, beyond the precise

boundaries of such premises."  *Mitchell v. C & H Transp. Co., Inc.*, 90 N.M. 471, 475 (1977).

Thus, for so long as Plaintiff occupied the flat cars controlled by Defendant, the Court finds

that Defendant owed her the duty of safeguarding against foreseeable injury, which

included keeping the flat cars - and the means of ingress and egress therefrom - in a

reasonably safe condition.  As a consequence, the contention that Plaintiff has failed to

demonstrate a duty owed to her must fail.  It follows, therefore, that as to this element,

Defendant has failed to meet its prima facie burden for summary judgment.

### b.　　Breach

　　　Defendant directs the greater part of its pleadings toward arguing that Plaintiff

cannot establish a breach of duty.  Yet, despite its efforts, Defendant fails to satisfy its burden in this summary judgment proceeding.

For her part, Plaintiff introduces the testimony of both herself and her husband that the ladder collapsed or slipped when she descended it.  Pl. Dep. 64:14-65:5; Mr. Van Valkenburgh Dep. 50:2-51:20.  In addition, Plaintiff presents testimony from both herself and her husband that one of the ladder's feet was damaged or deformed in a significant fashion.  Pl. Dep. 40:24-45:4; Mr. Van Valkenburgh Dep. 44:2-46:23.  Further, Plaintiff presents the testimony of her husband, who describes how, in stark contrast to prior occasions, when the accident occurred, the feet of the ladder were placed on a concrete platform at the direction of Defendant's agent.  Pl. Dep. 72:2-18; Mr. Van Valkenburgh Dep. 22:21-23:1.  From this evidence, a reasonable juror could find that Defendant equipped Plaintiff and her husband with a ladder with a defective foot and that Defendant directed Plaintiff, on this one occasion, to use that ladder on the concrete platform.  Conversely, a reasonable juror could conclude that providing Plaintiff with a ladder with a compromised foot knowing that it would be used on a concrete platform was a failure to exercise reasonable care.  If a juror came to either conclusion, they could reasonably find a breach by Defendant.

Defendant, however, points to two separate New Mexico state decisions to argue that Plaintiff's evidence is insufficient. The first of these, *Bassett v. Sheehan*, involved a claim of legal malpractice brought by property owners dissatisfied with the instrument of

conveyance drafted by their attorney.  *Bassett v. Sheehan*, 144 N.M. 178 (Ct. App. 2008).

Specifically, the instrument had failed to explicitly reserve water rights to the Bassetts and

later led to them having to defend against the land purchaser suing them for those rights.

*Id.* at 179.  The Bassetts' defense of their water rights took them to the New Mexico Supreme

Court.  *Id.*  That court held that the conveyance had reserved the water rights to the Bassetts

despite the lack of express language to that effect.  *Id.*  Despite that victory, the Bassetts then

sued the drafting attorney, Clifford Atkinson ("Atkinson"), and the firm that defended their

water rights suit, Sheehan, Sheehan & Stelzner ("Sheehan"), for malpractice.  *Id.*  As to

Atkinson, the Bassetts alleged that his "preparation of the conveyance documents fell below

the standard of care because the documents did not expressly exclude a transfer of water

rights."  *Id.*  The Court of Appeals upheld a grant of summary judgment for Atkinson

because, given that the deed had been found to retain the Bassetts' water rights, the plaintiff

failed to present evidence that the defendants had been unreasonable in drafting the deed.

*Id.*

　　Although any cited case can be said to involve different facts, the *Bassett* case arises

from such a dramatically different fact context than the instant case that its applicability is

suspect.  Aside from standing for the general principle that a plaintiff must present evidence

to rebut a summary judgment motion which successfully negates a necessary element,

*Bassett* does little to inform the analysis in the instant case.  The *Bassett* plaintiffs were suing

an attorney whose document had been conclusively determined to accomplish its purpose.

To establish tort liability in such a case, it is unsurprising that a court would demand evidence that the document had, nonetheless, been drafted without the required standard of care. The *Bassett* plaintiffs provided none. To the contrary, in the instant case, Plaintiff has presented some evidence that the ladder was defective and that said defect caused it to fail when used on the concrete platform as Defendant's agent had directed. As such, the logic of *Bassett* does not compel a granting of summary judgment in the instant case.

Next, Defendant invites the Court to consider the case of *Hull v. Feinstein*, which the New Mexico Court of Appeals decided in 2002. Def.'s Mot. 8; *see Hull v. Feinstein*, 133 N.M. 531 (Ct. App. 2002). In *Hull*, Plaintiff Gretchen Hull ("Hull") brought suit, *pro se*, against the City of Santa Fe, New Mexico, and Andrew Feinstein ("Feinstein"), a neighbor and homeowner, alleging that she suffered injuries and consequential damages when her foot caught on a rise in a sidewalk and she subsequently fell. *Id.* at 532. The state trial court granted summary judgment in favor of Feinstein and then presided over a trial to the bench of Hull's remaining claim against the City of Santa Fe ("the City"). At the close of her case, the trial court dismissed Hull's claims against the City. *Id.* at 532-33. Hull then appealed, claiming, among other things, that the trial court improperly dismissed her suit against the City. *Id.*

Immediately, it is apparent that the *Hull* opinion can provide little support in a summary judgment analysis because it involved the review of a dismissal after a bench trial. The Court of Appeals made clear that the trial court, "[i]n making its findings . . . was not

limited to determining whether [Hull] had produced sufficient evidence to withstand a motion for judgment as a matter of law . . . [but] rather, it was entitled to weigh the evidence, including Plaintiff's testimony, and to determine the weight it was entitled to receive in the court's judgment as the trier of fact." *Id.* at 534 (citations omitted). Clearly, this Court cannot weigh the evidence when deciding the pending summary judgment motion.

In upholding the trial court dismissal, the appellate court recounted that Hull presented only herself and her employer[3] as witnesses. *Id.* at 535. The latter did not witness the fall and could only testify as to Hull's employment and events subsequent to her fall. *Id.* The former, despite introducing photographs of the sidewalk, the rise, and her injuries, did not testify that the sidewalk protrusion caused her to fall. *Id.* In fact, Hull could only recall "walking her dog, going back to the house, and then being on the ground." *Id.* Consequently, the appellate court explained that "the [trial] court could rationally have concluded that Plaintiff's fall was not caused by the protrusion in the sidewalk, but by her own negligence." *Id.* As a result, the New Mexico Court of Appeals found that the trial court "did not err in granting the City's motion to dismiss." *Id.*

Plaintiff in the instant case has presented more evidence prior to the commencement

---

[3]   For reasons unknown to the Court, Defendant refers to Hull's employer as her husband. Nothing in the opinion substantiates that Hull was also married to this individual.

of trial than Hull did at her bench trial.  Given the evidentiary distinctions and the different standard applied at the summary judgment phase, *Hull* does not compel a granting of summary judgment in the instant case.

As an alternative grounds for granting its Motion, Defendant also highlights that neither Plaintiff nor her husband brought the alleged defect in the ladder to the attention of Defendant's agents and that both continued to use the ladder after the accident.  Def.'s Mot. at 9.  While these facts may impact the credibility of Plaintiff and her husband, and further, may be indicative of comparative negligence, they do not support the granting of summary judgment in this case.[4]

Without question, the Court detects a number of weaknesses in the evidence Plaintiff has brought to bear.  However, when ruling on the instant motion, the Court must resolve all reasonable inferences and doubts and construe all evidence in the light most favorable to the non-moving party.  *See Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see also Hunt*, 526 U.S. at 550–55; *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County*, 546

---

[5]     Defendant also argues that Plaintiff's claim is more properly a products liability claim.  Def.'s Reply 6.  Yet, Plaintiff's claims do not contemplate the defective manufacture of the ladder in question.  To the contrary, they concern Defendant's duty to provide a reasonably safe means of ingress and egress from the railroad flat cars under its control and the possible breach that would occur if an unsafe means was provided.  Perhaps Plaintiff could have also brought a products liability claim, but that potential alternative does not support summary judgment on the claims before the Court.

F.3d 1299, 1306 (10th Cir. 2008). The Court cannot make credibility determinations as Plaintiff's repeated references to "objective evidence" appear to request. *See Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001); Def.'s Mot. 9, Def.'s Reply 6. To the contrary, the Tenth Circuit clearly holds that "[t]he weighing of evidence, the reconciliation of inconsistent testimony, and the assessment of a witness' credibility is solely within the province of the jury." *Id.* The Court need not find that a reasonable jury would likely find that Defendant breached its duty to Plaintiff, but simply that a reasonable jury *could* do so. *See Liberty Lobby*, 477 U.S. at 251.

Having reviewed the pleadings and the evidence attached thereto, the Court finds that Defendant has failed to satisfy its prima facie burden of establishing an absence of material fact relating to breach. Even if Defendant had met that burden, the Court would find that Plaintiff has rebutted it by setting forth specific facts showing a genuine issue of material fact as to breach. Consequently, this Court cannot grant summary judgment for Defendant on the issue of breach.

### c.   Causation

Alongside its arguments concerning breach and duty, Defendant also prays this Court grant it summary judgment based on Plaintiff's inability to prove causation. Essentially, Defendant argues that, even if the ladder was defective and should not have been used on a concrete platform, Plaintiff has presented no evidence that this defect caused Plaintiff's fall on that day.

Ordinarily, what constitutes proximate cause is a question of fact, but the issue of proximate cause becomes a question of law when the facts are undisputed and there is no evidence from which a reasonable trier of fact could find a causal connection between the allegedly negligent act and the injury. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). *See Adamson v. Highland Corporation*, 80 N.M. 4, 8 (Ct. App. 1969) (holding that where the facts are not in dispute and the reasonable inferences from those facts are plain and consistent, proximate cause becomes an issue of law). Conversely, however, "[w]here reasonable minds may differ on the question of proximate cause, the matter is to be determined by the fact finder." *Galvan v. City of Albuquerque*, 885 N.M. 42, 45 (Ct. App. 1973) (citing *Fitzgerald v. Valdez*, 77 N.M. 769, 427 P.2d 655 (1967)). *See Lerma v. State Highway Dep't*, 117 N.M. 782, 784-85 (1994) ("With few exceptions, proximate cause is a question of fact to be determined by the factfinder."). Because the material facts surrounding causation in this case remain disputed, and furthermore, because reasonable minds might differ on this issue, the Court must deny summary judgment. *See Galvan*, 885 N.M. at 45.

Admittedly, Plaintiff's evidence that the alleged defect caused Plaintiff's fall rests primarily on inference. Reading Mr. Van Valkenburgh's deposition in the light most favorable to Plaintiff, his testimony is that the feet of the ladder slipped away from the rail car when Plaintiff began to descend the ladder. Mr. Van Valkenburgh Dep. 50:16-51:20. When the ladder slipped, Plaintiff unsurprisingly fell off the ladder. *Id.* at 50:7-8. Given the testimony that the feet of the ladder had been placed on a concrete platform and the

-26-

testimony that one of the feet was damaged, a reasonable jury could infer that this combination caused the ladder to slip and Plaintiff to fall.

Certainly, the factfinder's job in this case would be made much easier if the ladder had been preserved and had been tested by an expert.[5]  Nonetheless, the lack of such expert testing does not mean that a reasonable juror, after having found the breach described above, could not find that the breach caused Plaintiff's fall.

Having reviewed the pleadings and the evidence attached thereto, the Court finds that Defendant has failed to satisfy its prima facie burden of establishing an absence of material fact relating to causation.  Even if Defendant had met that burden, the Court would find that Plaintiff has rebutted it by setting forth specific facts showing a genuine issue of material fact as to breach.  Consequently, this Court cannot grant summary judgment for Defendant on the issue of causation.

**B.    There Is Sufficient Evidence of Plaintiff's Injury to Submit the Negligence Claim to a Jury**

In company with the above-referenced arguments, Defendant also prays for summary judgment "because Plaintiff has failed to prove that she has sustained an injury." Def.'s Mot. 10.  Oddly, Defendant submits this challenge in seeming disregard for the

---

[5] For the purposes of this analysis, the Court is not relying on an inference against Defendant for spoliation of the evidence.  *See* NEW MEXICO UNIFORM JURY INSTRUCTIONS (CIVIL) 13-1651 (2005).  Whether such an instruction would be appropriate will be decided at a later time.

related evidence submitted by Plaintiff.  Hence, rather than substantiating Plaintiff's lack of evidence and its concomitant entitlement to judgment as a matter of law, Defendant merely acts to confirm the existence of material disputes properly reserved to the trier of fact.

> ### 1.      Positions of the parties

Despite Plaintiff's claim that she "permanently lost her sense of smell and her sense of taste" as a result of the fall at Divisadero, Defendant maintains that the only way to objectively identify or confirm that Plaintiff has lost her sense of smell and taste is by conducting a smell study.  *Id.*; Def.'s Facts ¶ 16.  Thus, while Plaintiff supplies the deposition testimony of two doctors who diagnosed her with a loss of smell (anosmia), Defendant highlights that "neither doctor independently confirmed that Plaintiff had permanently lost her sense of smell."  Def.'s Mot. 10; Def.'s Facts ¶¶ 17, 18.  As a consequence, Defendant posits that Plaintiff cannot prove "that her recurrent bouts with sinusitis, her invasive surgeries, or her hyposmia are not the cause of her alleged loss of smell."  Def.'s Mot. 10.

In response, Plaintiff contends "[b]oth Drs. Thomason and Gerencer testified that, as a matter of reasonable medical probability, Carole Van Valkenburgh's first cranial nerve was severed when she struck her head on the railroad station platform."  Pl.'s Resp. 15.  By her account, her injury is not one that can be "seen on a CT scan or other similar device." *Id.* at 16.  Nevertheless, she states that these doctors "testified that [they] had no reason to

-28-

question her truthfulness." *Id.* According to Plaintiff, only if one of these physicians suspected her of malingering would she have been approached to undertake the "Philadelphia smell test." *Id.* Having examined her, Plaintiff recounts that "Dr. Gerencer saw no need to send [Plaintiff] off to Pennsylvania to take the equivalent of a lie detector test." *Id.*

### 2.    Discussion

Following a review of the parties' arguments regarding injury, the Court finds that Defendant has failed to establish its prima facie case on summary judgment on the issue of injury. As a threshold matter, Defendant has failed to demonstrate that there is no genuine dispute as to the relevant, material facts. *See* FED. R. CIV. P. 56(a). Additionally, Defendant has failed to show "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc.*, 939 F.2d at 891. The Court makes these findings based upon a review of the record, which clearly evinces that Plaintiff has proffered the competent deposition testimony of two physicians specializing in disorders of the ear, nose, and throat. Further, that review has made clear that for the Court to find in favor of Defendant on this issue, the Court would have to weigh the evidence of these physicians. Clearly, the Court may not do so, and as a consequence, the Court must deny Defendant judgment as a matter of law. *See Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001).

First, the record conveys obvious questions concerning material facts in this case. For its part, Defendant's pleadings communicate its belief that Plaintiff has not suffered a harm

attributable to actions or omissions on its part.  Def.'s Mot. 10 ("Plaintiff cannot prove that

her recurrent bouts with sinusitis, her invasive surgeries, or her hyposmia are not the cause

of her alleged loss of smell.").  Defendant supports this contention with Plaintiff's own

answers to interrogatory questions and the deposition testimony of one of her treating

physicians.  *Id.*, Ex. A at 1-2; Def.'s Facts ¶ 2; Dr. Thomason Dep. 25:8-22.  However, Plaintiff

claims that her "first cranial nerve was severed when she struck her head on the

[Divisadero] railroad station platform."  Pl.'s Resp. 15.  In support of her contention,

Plaintiff attaches the testimony of Dr. Thomason, who concluded that Plaintiff "fell, hit her

head, and tore loose her first cranial nerve from a contrecoup injury."  Dr. Thomason Dep.

53:10-12.  Moreover, she appends the testimony of Dr. Gerencer, who concurred with Dr.

Thomason's conclusion that Plaintiff had suffered a traumatically-induced injury resulting

in a permanent loss of her sense of smell.  Dr. Gerencer Dep. 38:1-21.  Confronted with these

opposing positions - both supported by competent evidence - the Court cannot ignore that

genuine issues of material fact exist that must be decided by the trier of fact.  *See Meeker v.*

*Rizley*, 346 F.2d 521, 525 (10th Cir. 1965) ("It is fundamental that issues of fact are for the jury

and that the right to have such questions decided by a jury is of constitutional status.").

Secondly, to find for Defendant based on its pleadings, the Court would be forced

to engage in impermissible weighing of the parties' evidence.  *Foster v. Alliedsignal, Inc.*, 293

F.3d 1187, 1195 (10th Cir. 2002) (holding that "credibility determinations, the weighing of

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge") (quoting *Liberty Lobby*, 477 U.S. at 255).  Clearly, when adjudicating a claim involving harm to an individual's cranial nerve, the Court at summary judgment may consider the deposition testimony of two physicians[6] specializing in the field of otolaryngology.  Recognizing this truth, Defendant's argument for summary judgment based on Plaintiff's failure to "objectively" confirm her anosmia assumes another patina.  Through this lens, the challenge becomes a prayer that this Court discount the diagnosis of these two physicians, not because they failed to diagnose Plaintiff based on their training, experience, and available data, but because they failed to diagnose Plaintiff based on their training, experience, *and the best possible data*.  Such an exercise necessarily calls upon the Court to weigh Plaintiff's evidence and resolve inferences not in Plaintiff's favor, but in Defendant's.  Doing so would violate clearly established law.  *See Matsushita*, 475 U.S. at 587 (holding that on summary judgment, the inferences to be drawn from the facts must be viewed in the light most favorable to the non-movant); *Utah Lighthouse Ministry v. Foun. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (holding that a court at summary judgment shall not weigh evidence or make credibility determinations).

　　　Having reviewed the pleadings and the evidence attached thereto, the Court finds that Defendant has failed to satisfy its prima facie burden of establishing an absence of

---

[6] The Court recognizes that Defendant has moved to exclude the testimony of Dr. Thomason.  *Doc. 60*.  That motion is still pending.  Nonetheless, even if the Court were to grant that motion, the deposition testimony of Dr. Gerencer would be sufficient to defeat summary judgment on the issue of injury.

material fact relating to injury. Even if Defendant had met that burden, the Court would find that Plaintiff has rebutted it by setting forth specific facts showing a genuine issue of material fact as to injury. Consequently, this Court cannot grant summary judgment for Defendant on the issue of injury.

### C.  Sufficient Evidence Exists for the General Release Issue to Survive

As a final ground for granting summary judgment, Defendant argues that "Plaintiff's claims against [Defendant] should be dismissed because Plaintiff waived her right to bring suit when she signed a General Release for [Defendant] relieving [Defendant] of liability." Def.'s Mot. 11.   Prior to embarking on the railroad car excursion through Mexico, Defendant's President, Larry Olsen ("Mr. Olsen"), asserts by affidavit that each guest must sign a release limiting Defendant's liability for negligence.  Olsen Aff. 1.  Furthermore, Mr. Olsen advises that signing the release "was a strict requirement" imposed upon each guest, and that without that release, Plaintiff "would not have been allowed to board the train." *Id.* at 1-2.  Although Defendant has produced a copy of the release signed by Mr. Van Valkenburgh, Mr. Olsen acknowledges that a signed copy of Plaintiff's release could not be located.  *Id.* at 2.  Nonetheless, Defendant contends that "[b]ecause the extrinsic evidence shows Plaintiff executed a General Release in favor of Tracks, and because Plaintiff does not deny signing the General Release, Plaintiff's claims against Tracks are unenforceable and must fail."  Def.'s Mot. 12.

In reply, Plaintiff emphasizes that Defendant "has no release from [Plaintiff]."  Pl.'s

Resp. 16.  When deposed, Plaintiff testified that she did not recall signing a release like that signed by Mr. Van Valkenburgh.  Pl. Dep. 37:20-24.  Similarly, at his deposition, Mr. Van Valkenburgh testified he did not believe his wife signed a release.  Mr. Van Valkenburgh Dep. 40:12-15.  At the same time, he admitted that he didn't "know for sure, absolute sure." *Id.* at 40:22.  Based upon this testimony, Plaintiff maintains that she "did not release" Defendant from liability in this suit.  Pl.'s Resp. 16.

The issue of what release may or may not have been signed in this case merits little discussion from the court at the summary judgment stage.  Had the release been produced, an examination of its contents might have proven dispositive.  That proffer, however, has not occurred.  Instead, the parties have presented the Court with divergent positions on this material issue supported by extrinsic evidence.  The weighing of that evidence and the ultimate determination of whether or not Plaintiff signed a liability release in favor of Defendant must be reserved for the trier of fact.  *See Meeker*, 346 F.2d at 525, *Foster*, 293 F.3d at 1195, *Utah Lighthouse Ministry*, 527 F.3d at 1050.

Having reviewed the pleadings and the evidence attached thereto, the Court finds that Defendant has failed to satisfy its prima facie burden of establishing an absence of material fact relating to the existence of a general release.  Even if Defendant had met that burden, the Court would find that Plaintiff has rebutted it by setting forth specific facts showing a genuine issue of material fact as to that issue.  Consequently, this Court cannot grant summary judgment for Defendant on the basis that Plaintiff executed a general

release.

## V.   CONCLUSION

For the reasons outlined above, the Court must deny judgment as a matter of law on the negligence claim.  Defendant's only argument for summary judgment on the contract claim is that "because Plaintiff has failed to show any act or omission by Tracks which caused her harm, her claim for breach of contract must fail as well."  Def.'s Mot. 10.  Having rejected that premise, the Court must deny judgment as a matter of law on the contract claim as well.

Therefore, having considered the record, pleadings, and relevant law, the Court **HEREBY DENIES** Defendant's "Motion and Memorandum in Support of Defendant's Motion for Summary Judgment" *in toto*.  *Doc. 54.*

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent